# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# BEAUFORT DIVISION

| | |
|---|---|
| Ernest Lee Carroll, | ) |
|       Plaintiff, | ) |
| | ) Civil Action No.: 9:09-199-PMD |
|       v. | ) |
| Kevin Reese, individually and in his official capacity as a police officer for the City of Columbia; Arthur L. Thomas, individually and in his official capacity as a police officer for the City of Columbia; Thomas Dobson, in his official capacity as a police officer for the City of Columbia; and Geraldine Steedley, in her official capacity as a police officer for the City of Columbia, | ) ) ) ) **Order** ) ) ) ) ) ) |
|       Defendants. | ) |

This matter is before the court upon Plaintiff Ernest Lee Carroll's ("Plaintiff") objections to a United States Magistrate Judge's Report and Recommendation ("R&R"), which recommends that this court grant Defendants' motion for summary judgment. Having reviewed the entire record, including Plaintiff's objections, the court finds that the Magistrate Judge fairly and accurately summarized the facts and applied the correct principles of law. Accordingly, the court adopts the R&R and fully incorporates it into this order.

## BACKGROUND

Pursuant to 42 U.S.C. § 1983, Plaintiff brought suit against the Defendants, all City of Columbia police officers, alleging that they violated his constitutional rights by having him wrongfully arrested. To support his amended complaint, Plaintiff alleges that, on November 7, 2006, Defendant Kevin Reese falsely swore to an affidavit, which accused Plaintiff of impersonating a

police officer and which formed the basis of probable cause to secure a warrant for Plaintiff's arrest. Plaintiff further alleges that Defendants Thomas, Dobson, and Steedley also gave statements and caused to be filed an arrest warrant, which they knew to contain false and misleading information.

Plaintiff's arrest arose out of an investigation of an incident involving a gang-related shooting at the Hammond Village Apartment complex in Columbia, South Carolina in April of 2006. In this shooting, according to Defendant Reese's affidavit, several suspects fired multiple gunshots into various apartments within the complex. One of the victims of this shooting was Denise Mathis, who lived in an apartment in the complex. Officer Reese, who had been investigating the shootings, attests to the fact that Ms. Mathis called him on or about November 6, 2006, during which she sounded very concerned and upset. She asked Officer Reese if he had sent another officer to investigate the incident or to interview her, to which Officer Reese responded that he had not. Ms. Mathis complained that a male subject came to her apartment, identified himself as a police officer investigating the shooting, and asked her a number of questions regarding the incident. In response to her complaint, Officer Reese asked Ms. Mathis to write down her recollection of the incident, while he and Defendant Arthur Thomas went to her residence to get more information.

When these officers met with Ms. Mathis, Officer Reese attests that she gave him the written notes of the incident she had made following their telephone conversation and that, during the course of the interview, Mathis identified her son, Chicano Drake, as an additional witness to the incident. Both Ms. Mathis and Mr. Drake stated that a tall black male with a bald head came to their apartment, represented himself as a police officer investigating the April 2006 shooting, showed them a badge, and asked a number of questions regarding the incident. Ms. Mathis also stated that the male subject went to other apartments in the complex, including the apartment of Rochelle

White. According to Officer Reese's affidavit, Rochelle White was interviewed and specifically identified Plaintiff as the man that came to her door asking questions about the shooting. Apparently, Ms. White knew Plaintiff from prior dealings.

Having the name of a suspect, Officer Reese prepared a photo lineup using Plaintiff's driver's license photo, as well as several other individuals with similar appearances, and the photo lineup was shown to both Ms. Mathis and Mr. Drake. According to Officer Reese, Ms. Mathis was unable to identify any of the individuals as the suspect; however, Mr. Drake picked out Plaintiff's photo without hesitation. Both Ms. Mathis and Mr. Drake signed written statements in regard to the events of November 6, 2006, and based on the signed statements, as well as the identifying information provided by Ms. White and Mr. Drake's positive identification of Plaintiff in the photo lineup, Officer Reese believed he had adequate probable cause to suspect Plaintiff of impersonating a police officer. He telephoned Plaintiff and asked him to come to the police station to be interviewed, but Plaintiff refused to do so. Officer Reese attests that he then consulted with Assistant Solicitor Will Bryant in regard to the incident and as to whether he agreed that there was sufficient probable cause to obtain a warrant charging Plaintiff with impersonating a police officer, and after this consultation, Officer Reese provided the information he had for the probable cause to the City of Columbia's ministerial recorder, who determined that probable cause existed for Plaintiff's arrest and issued the warrant authorizing such.

Defendant Arthur Thomas, an investigator who assisted Officer Reese with this investigation, attested to the same set of facts presented by Officer Reese. He too claims that Ms. Mathis complained of a tall, bald-headed, black male who came to her apartment, presented himself as a police investigator, showed her a badge in his wallet, and attempted to get her to change her story

regarding the April 2006 drive-by shooting. Officer Thomas also attests to the fact that he and Officer Reese interviewed Ms. White and that she identified Plaintiff as the person who came to her apartment asking questions about the drive-by shooting. Finally, Officer Thomas attests to the facts that he and Officer Reese presented Mr. Drake and Ms. Mathis with a photo lineup and that, although Ms. Mathis was not able to identify Plaintiff, Mr. Drake identified Plaintiff without hesitation.[1]

In his affidavit accompanying the arrest warrant, Defendant Reese attested to the following:

> ON 11/6/06 @ 921 MARLBORO ST APT. 6-2, COLA SC, DEF DID PRESENT GOLD BADGE TO AT LEAST 2 RESIDENTS AND TOLD THEM HE WAS A POLICE OFFICER. HE WENT ON TO TELL THE WITNESSES THAT HE WAS INVESTIGATING A SHOOTING INCIDENT THAT OCCURRED 04/2006, AND HAVING TOTAL KNOWLEDGE THAT THE RESIDENT WAS A WITNESS IN THE CASE PROCEEDED TO QUESTION SAID WITNESS ABOUT OTHER WITNESSES & THE EVENTS OF THE INCIDENT. ON 11/07/06 ONE OF THE WITNESSES POSITIVELY IDENTIFIED THE DEF IN A PHOTO LINE-UP. ANOTHER VICTIM IN THE CASE HAS GIVEN INVESTIGATORS A VERBAL **STATEMENT THAT THE DEF DID COME TO HER RESIDENCE AND QUESTIONED HER ALSO. THIS WITNESS KNOWS THE DEF BY NAME AND SIGHT.**

(Defs.' Mot. for Summ. J. Ex. A) (emphasis in original).

As already discussed, Plaintiff claims that these statements and other information provided by Defendants are false, and as such, he claims to have been falsely arrested and maliciously prosecuted in violation of his Fourth Amendment rights.[2] Plaintiff claims the real reason he was arrested by Defendant Reese was in retaliation for a personal dispute between them, and because of

---

[1] Defendants Steedley and Dodson also submitted affidavits in which they attest to the fact that they had no personal involvement in the investigation of Plaintiff's case or in the preparation of his arrest warrant.

[2] Plaintiff was subsequently acquitted of the charge of impersonating a police officer by a General Sessions jury on January 24, 2008.

this unconstitutional conduct, Plaintiff states that he was humiliated, that his reputation was injured, and that he became sick and suffered great pain and mental anguish. Therefore, he seeks both compensatory and punitive damages from Defendants. Defendants have moved for summary judgment, arguing that probable cause existed to support the warrant for Plaintiff's arrest. After considering each side's arguments, the Magistrate Judge recommends that the court grant Defendants' motion for summary judgment, and Plaintiff now objects to this recommendation.

## STANDARD OF REVIEW

### I. The Magistrate Judge's Report and Recommendation

The Magistrate Judge made his review in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02. The Magistrate Judge only makes a recommendation to the court. It has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). Parties are allowed to make a written objection to a Magistrate Judge's report within fourteen days after being served a copy of the report. 28 U.S.C. § 636(b)(1). From the objections, the court reviews *de novo* those portions of the R&R that have been specifically objected to, and the court is allowed to accept, reject, or modify the R&R in whole or in part. *Id.*

### II. Legal Standard for Summary Judgment

To grant a motion for summary judgment, the court must find that "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). "[W]here the record taken as

a whole could not lead a rational trier of fact to find for the nonmoving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)).

Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual bases." *Celotex*, 477 U.S. at 327. The court remains mindful that Plaintiff appears before the court *pro se*, and therefore, his pleadings are accorded liberal construction. *Estelle v. Gamble*, 429 U.S. 97 (1976). The requirement of liberal construction, however, does not mean that the court can ignore a clear failure in pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

**ANALYSIS OF PLAINTIFF'S OBJECTIONS**

At the outset, the court notes that a distinction has been drawn between a claim for false arrest and a claim for malicious prosecution, and the distinction is based on whether or not an allegedly unlawful arrest was made pursuant to an arrest warrant. As the Fourth Circuit recently stated:

> As a general rule, an unlawful arrest pursuant to a warrant will be more closely analogous to the common law tort of malicious prosecution. An arrest warrant constitutes legal process, and it is the tort of malicious prosecution that permits damages for confinement pursuant to legal process. On the other hand, wrongful warrantless arrests typically resemble the tort of false arrest.

*Dorn v. Town of Prosperity*, No. 08-2005, 2010 U.S. App. LEXIS 5651, at *5 (4th Cir. March 18, 2010). Therefore, a false arrest claim must fail where it is made "pursuant to a facially valid warrant." *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998); *Brooks v. City of Winston-Salem*, 85 F.3d 178, 181 (4th Cir.1996) (holding that a public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant). It is undisputed that Plaintiff's arrest was made pursuant to a facially valid warrant, and no facial deficiency with the warrant is alleged. At most, therefore, Plaintiff can allege only a cause of action for malicious prosecution based on an alleged lack of probable cause for issuing the warrant in the first instance. *See Dorn v. Town of Prosperity*, No. 08-2005, 2010 U.S. App. LEXIS 5651, at * 12 (4th Cir. March 18, 2010) ("We follow the South Carolina rule that there can be no claim for false arrest where a person is arrested pursuant to a facially valid warrant.").

Of course, it is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution, *Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009) (citing *Albright v. Oliver*, 510 U.S. 266, 279–80 n.5 (1994) (Ginsburg, J., concurring)); nevertheless,

7

the Fourth Circuit has considered a malicious prosecution claim as "simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution—specifically, the requirement that the prior proceeding terminate favorably to the plaintiff." *Gantt v. Whitaker*, 57 F. App'x 141, 146 (4th Cir. 2003) (citation omitted). Therefore, in order for a plaintiff to state a section 1983 malicious prosecution claim for a seizure violative of the Fourth Amendment, he or she must establish that [1] the defendants "seized plaintiff pursuant to legal process that was not supported by probable cause and [2] that the criminal proceedings have terminated in plaintiff's favor." *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005) (internal quotation and alterations omitted). Plaintiff has met the second element of his claim by demonstrating that the criminal proceedings against him were terminated in his favor; therefore, the only issue before the court is whether or not the Defendants had probable cause to seek a warrant for Plaintiff's arrest.

Probable cause exists when "facts and circumstances . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998). Probable cause requires more than "bare suspicion" but requires less than evidence necessary to convict. *Id.* "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." *Id.* And when it is considered in the light of all the surrounding circumstances, even "seemingly innocent activity" may provide a basis for finding probable cause. *Id.* Two factors govern the determination of probable cause in any situation: 'the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *Brown v. Gilmore*, 278 F.3d 362, 368 (4th Cir. 2002) (quoting *Pritchett v. Alford*, 973 F.2d 307, 314

8

(4th Cir. 1992)). Therefore, probable cause could be lacking in a given case, and an arrestee's right violated, either because of an arresting officer's insufficient factual knowledge, or legal misunderstanding, or both. *Id.* (internal quotation omitted). And "[t]o prove an absence of probable cause, [a plaintiff] must allege a set of facts which made it unjustifiable for a reasonable officer to conclude that [he] was violating [the law]." *Id.*

After considering the parties' briefs, the Magistrate Judge's R&R, and Plaintiff's objections, the court finds that Plaintiff has failed to establish any genuine issue of material fact as to the absence of probable cause for the arrest warrant. As the evidence shows, Ms. Mathis called Officer Reese to complain about an individual having visited her in her apartment, who showed her a badge and questioned her about a shooting that was under investigation. Furthermore, Ms. White identified Plaintiff as being that individual based on the facts that he also visited her apartment and she knew Plaintiff from prior interactions. Also, Ms. Mathis's son, Mr. Drake, picked Plaintiff's picture out of a photo lineup, which the court was provided and has reviewed, and also remembered Plaintiff showing him and his mother a badge. While Plaintiff has provided the court with a statement of Ms. White, in which she attests to the fact that she never saw Plaintiff reveal a badge, she can only attest to what she witnessed and not to things that may or may not have happened when Plaintiff met with Ms. Mathis and her son separately. Moreover, both Ms. Mathis and Mr. Drake testified at Plaintiff's trial that he showed them a badge and indicated that he was an investigator with the police department. Based on this record, the court believes the Magistrate Judge correctly determined that the Defendants has probable cause to seek a warrant for Plaintiff's arrest.

In his objections, Plaintiff argues that Ms. Mathis has a vision problem and alleges that she was under the influence of alcohol at the time Plaintiff met with her. To support this argument, he

provided the court with the statements of Judith Wise, and Kevin Mathis, Ms. Mathis's husband, in which each claim that Ms. Mathis has an alleged drinking problem. Plaintiff also provided a statement from Ms. Mathis, herself, in which she now claims to have bad vision and a drinking problem and that she did not see Plaintiff with a badge or hear him say he was a police officer at anytime in her presence. Instead, she now states that Officer Reese advised her that Plaintiff had a gold badge and stated he was a police officer. She also claims to have been afraid of Officer Reese because of his controlling demeanor and thought that he and Officer Thomas might take her to jail. In Judith Wise's statement, she also claims that Officer Reese became "irrate" over the fact that Plaintiff met with her about the drive-by shooting incident, and Plaintiff believes Ms. Wise's statement supports his assertion that Officer Reese maliciously sought a warrant for his arrest because they do not get along.

     Although Plaintiff has provided the court with a new statement by Ms. Mathis, in which she now changes her story—and by doing so, has perjured herself— Ms. Mathis does not allege, nor has she ever, that the Defendants threatened to take her to jail if she did not agree to a particular set of facts involving Plaintiff. Moreover, at Plaintiff's trial, both Ms. Mathis's and her son's testimony were consistent with their written statements, which were that Plaintiff had indicated to them that he was a police officer and that he had showed them a badge. Furthermore, Defendants provided the court with the photo lineup provided to Ms. Mathis and her son, in which her son identified Plaintiff as the man who interviewed them about the drive-by shooting by circling his picture and placing his initials and the date by his selection. Therefore, despite Ms. Mathis's alleged vision and drinking problems, her son not only corroborated her version of the incident, but also provided Defendants with the additional information that Plaintiff was the man who came to their apartment. As such, the

court finds that, viewed in the totality of the circumstances, the Defendants had probable cause to seek and obtain a warrant for Plaintiff's arrest at the time they did so, despite the fact that Plaintiff ultimately was found not guilty of impersonating a police officer.

## **CONCLUSION**

Therefore, based on the foregoing, it is **ORDERED** that Defendants' motion for summary judgment is **GRANTED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**August 24, 2010**
**Charleston, SC**